# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CMP CONSULTING SERVICES, INC., individually and on behalf of all those similarly situated,<br><div align="right">Plaintiff,</div><br>vs.<br><br>NHK SPRING CO. LTD.; NHK INTERNATIONAL CORPORATION; NAT PERIPHERAL (HONG KONG) CO., LTD.; NAT PERIPHERAL (DONG GUAN) CO., LTD.; NHK SPRING (THAILAND) CO., LTD.; TDK CORPORATION; MAGNECOMP PRECISION TECHNOLOGY PUBLIC CO. LTD.; SAE MAGNETICS (H.K.) LTD; and HUTCHINSON TECHNOLOGY INC.,<br><br><br><div align="center">Defendants.</div> | Civil Action No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff CMP Consulting Services, Inc. ("CMP" or "Plaintiff") files this civil action pursuant to state antitrust, consumer protection, and common laws, and Rule 23 of the Federal Rules of Civil Procedure, for damages, costs of suit, injunctive relief and other relief as may be just and proper, individually and on behalf of all those similarly situated ("Class" as defined below), against Defendants NHK Spring Co. Ltd.; NHK International Corporation ; NAT Peripheral (Hong Kong) Co., Ltd.;. NAT Peripheral (Dong Guan) Co., Ltd.; NHK Spring (Thailand) Co., Ltd.; TDK Corporation; Magnecomp Precision Technology Public Co. Ltd.; SAE Magnetics (H.K.) LTD; and Hutchinson Technology Inc. (together "Defendants") for their conspiracy to violate those laws by fixing, raising and/or maintaining the prices of hard disk drive suspension assemblies ("HDD Suspension Assemblies") in the United States.

Based upon personal knowledge, information, belief, and investigation of counsel, Plaintiff specifically alleges as follows.

## I.   SUMMARY OF THE CASE

1.    This action is brought against Defendants, the dominant manufacturers and suppliers of HDD Suspension Assemblies, for engaging in a years-long conspiracy to illegally raise the prices of their products to artificial levels and allocate the markets in which they sold.

2.     HDD Suspension Assemblies are a component of hard disk drives ("HDDs"), which are used to store electronic information. Assistant Attorney General  Makan Delrahim of the U.S. Department of Justice's ("DOJ") Antitrust Division, stated that HDD suspension assemblies are "critical to the operation and performance of electronic devices, and their impact on American consumers and business is direct and substantial."

3.     HDDs may be built into electronic devices, such as desktop and laptop computers, gaming consoles, and MP3 players, or sold as stand-alone storage devices. An HDD uses a magnetic recording head to read from and write onto a spinning disk contained in the hard drive. An HDD Suspension Assembly is an electro-mechanical component that holds a disk drive's recording head at a microscopic distance above the drive's disks.

4.     Pursuant to their anticompetitive agreements, Defendants exchanged pricing information, including their plans for pricing quotes, which they used to inform their negotiations with U.S. and foreign customers that purchased suspension assemblies and produced hard disk drives for sale in, or delivery to, the U.S. and elsewhere.

5.     Competition authorities in the U.S. and in other countries have been investigating Defendants' conspiracy since at least 2016.

6.      As early as July 2016, DOJ opened an investigation relating to HDD Suspension Assemblies. NHK Spring disclosed later that on July 26, 2016, DOJ performed an on-site inspection of an NHK company.

7.      In July 2019, DOJ filed a one-count information in this court against NHK Spring Co. Ltd, charging the company with fixing prices for HDD Suspension Assemblies. NHK Spring has agreed to plead guilty and pay a $28.5 million criminal fine, subject to court approval.

8.      In 2016, the Japanese Fair Trade Commission ("JFTC") also raided Defendants NHK Spring and TDK on suspicion that the companies were colluding in the supply of HDD components, including HDD Suspension Assemblies. In 2018, NHK Spring and one of its subsidiaries were fined ¥1.1 billion (nearly $10 million) for fixing the prices of HDD Suspension Assemblies; TDK cooperated with the Japanese regulators. South Korean and Brazilian competition authorities have also been investigating the cartel.

9.      As a result of Defendants' collusion, Plaintiff and other members of the Class have paid prices that were and are supra-competitive by a substantial amount, and which Defendants maintained during the Class Period above levels that would have prevailed under the existing supply and demand conditions, had Defendants not colluded to restrain competition. Plaintiff and members of the Class have been injured in their business and property for the period beginning at

least as early as May 2008 and continuing until at least April 2016 (the "Class Period"). To redress the economic injury Defendants caused, Plaintiff, on behalf of itself and all others similarly situated, seeks damages under state antitrust, consumer protection, and common laws.

## II.    JURISDICTION AND VENUE

10.    This Court has jurisdiction under 28 U.S.C. § 1332(d) because this action is a class action in which the aggregate amount in controversy for the proposed Class (defined below) exceeds $5,000,000, and at least one member of the Class is a citizen of a state different from that of one of Defendants. This Court also has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a).

11.    Venue is appropriate in this District under 28 U.S.C. §1391(b). Defendants reside, transact business, are found, or have agents within this District, and a portion of the affected interstate trade and commerce discussed below was carried out in this District. Defendants' conduct, as described in this Complaint, was within the flow of, was intended to, and did have a substantial effect on, the interstate commerce of the United States, including in this District. Moreover, the effects of Defendants' conduct on interstate trade or commerce are ongoing.

12.    During the Class Period, Defendants sold HDD Suspension Assemblies in a continuous and uninterrupted flow of interstate commerce, including in this District.    Defendants' conduct had direct, substantial, and

reasonably foreseeable effects on interstate commerce in the United States, including in this District.

13.     This Court has *in personam* jurisdiction over Defendants because they, either directly or through the ownership and/or control of their subsidiaries, *inter alia*: (a) transacted business throughout the United States, including in this District; (b) participated in selling HDD Suspension Assemblies throughout the United States, including in this District; (c) had and maintained substantial aggregate contacts with the United States as a whole, including in this District; or (d) were engaged in an anti-competitive and otherwise illegal conduct that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants also conduct business throughout the United States, including in this District, and have purposefully availed themselves of the laws of the United States.

14.     By reason of the unlawful conduct alleged herein, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiff and members of the Class. Defendants, directly and through their agents, engaged in activities affecting all states, to restrict output and fix, raise, maintain and/or stabilize prices in the United States for HDD Suspension Assemblies, which

unreasonably restrained trade and adversely affected the market for HDD Suspension Assemblies.

15.    Defendants' unlawful conduct described herein adversely affected persons and entities in the United States who purchased HDD Suspension Assemblies, including Plaintiff and the members of the Class.

## III.    THE PARTIES

### A.    Plaintiff

16.    Plaintiff CMP Consulting Services, Inc. is a Florida company with its principal place of business at 7266 SW 48 Street, Miami, FL 33155. CMP purchased HDD Suspension Assemblies indirectly from one or more Defendants.

### B.    NHK Defendants

17.    Defendant NHK Spring Co. Ltd. ("NHK Spring") is a Japanese corporation with its principal place of business at 3-10 Fukuura, Kanazawa-ku, Yokohama, 236-0004. NHK Spring manufactured and/or supplied HDD Suspension Assemblies during the Class Period.

18.    NHK International Corporation ("NHK International") is a U.S. subsidiary of NHK Spring with its principal place of business located in this district at 46855 Magellan Drive Novi, Michigan 48377. NHK International supplied, serviced, and/or sold HDD Suspension Assemblies during the Class Period.

19.     NAT Peripheral (Hong Kong) Co., Ltd. ("NAT Hong Kong") is a Hong Kong-based subsidiary of NHK Spring. NAT Hong Kong manufactured and/or supplied HDD Suspension Assemblies during the Class Period.

20.     NAT Peripheral (Dong Guan) Co., Ltd. ("NAT Dong Guan") is a China-based subsidiary of NHK Spring. NAT Dong Guan manufactured and/or supplied HDD Suspension Assemblies during the Class Period.

21.     NHK Spring (Thailand) Co., Ltd. ("NHK Thailand") is a Thailand-based subsidiary of NHK Spring. NHK Thailand manufactured and/or supplied HDD Suspension Assemblies during the Class Period.

### C.     TDK Defendants

22.     TDK Corporation ("TDK Corp.") is a Japanese corporation with its principal place of business at 2-5-1 Nihonbashi, Chuo-ku, Tokyo, 103-6128. TDK Corp. manufactured and/or supplied HDD Suspension Assemblies during the Class Period.

23.     Magnecomp Precision Technology Public Co. Ltd. ("MPT") is a Thailand-based subsidiary of TDK Corp. with its principal place of business located at 162 M.5 Phaholyothin Road, T .Lamsai A.Wangnoi, Ayutthaya 13170. MPT has a technology center located in Murrieta, California. MPT manufactured and/or supplied HDD Suspension Assemblies during the Class Period.

24.     SAE Magnetics (H.K.) LTD. ("SAE") is a Hong Kong-based subsidiary of TDK Corp. with its principal place of business at 6 Science Park East Avenue, Hong Kong Science Park, Hong Kong. SAE manufactured and/or supplied HDD Suspension Assemblies during the Class Period.

25.     Hutchinson Technology Inc. ("Hutchinson") is a U.S. subsidiary of TDK Corp. with its principal place of business located at 40 West Highland Park Drive NE, Hutchinson, Minnesota 55350. Hutchinson manufactured and/or supplied HDD Suspension Assemblies during the Class Period. In November 2015, TDK Corp. announced that it was acquiring Hutchinson. The acquisition was completed on October 6, 2016.

## IV.  AGENTS AND CO-CONSPIRATORS

26.     Various other persons, firms, entities, and corporations, not named as Defendants in this Complaint, have participated as co-conspirators with Defendants in the violations alleged herein, and have aided, abetted, and performed acts and made statements in furtherance of the conspiracy.

27.     The true names and capacities of additional co-conspirators, whether individual, corporate, associate, or representative, are presently unknown to Plaintiff.   Plaintiff may amend this Complaint to allege the true names and capacities of additional co-conspirators as they are discovered.

28.     At all relevant times, other persons, firms, and corporations, referred to herein as "co-conspirators," the identities of which are presently unknown, have willingly conspired with Defendants in their unlawful scheme as described herein.

29.     The acts alleged herein that were done by each of the co-conspirators were fully authorized by each of those co-conspirators, or were ordered or committed by duly authorized officers, managers, agents, employees, or representatives of each co-conspirator while actively engaged in the management, direction, or control of its affairs.

30.     The wrongful acts alleged to have been done by any one Defendant or co-conspirator were authorized, ordered, or done by its directors, officers, managers, agents, employees, or representatives while actively engaged in the management, direction, or control of such Defendant's or co-conspirator's affairs

## V.     FACTUAL ALLEGATIONS

### A.     HDDs and Suspension Assemblies

31.     An HDD is a storage device for digital content and information. HDDs can be stand-alone external storage devices or fully integrated into another piece of hardware, such as a desktop or laptop computer. HDDs store digital content of any kind. Many electronic devices require an HDD to function. Due to

their widespread use, the market for HDDs is large. During the Class Period, over four billion HDDs were shipped worldwide.[1]

32.     Within an HDD's casing are a series of disks called "platters" that store the device's data. A computer's central processing unit and motherboard communicate to a magnetic recording head within the HDD, a "read/write head," that tells the head where to move on the platter; the head then sends an electrical charge to a "sector" on the platter.



Figure 1.[2]

---

[1] Statista, *Worldwide unit shipments of hard disk drives (HDD) from 1976 to 2022*, *available at* https://www.statista.com/statistics/398951/global-shipment-figures-for-hard-disk-drives/

[2] *Hard Drives: How Do They Work?*, *available at* https://blogs.umass.edu/Techbytes/2017/04/04/hard-drives-how-do-they-work/

33.    HDD Suspension Assemblies are electro-mechanical components that position and hold a disk drive's read/write head at microscopic distances (approximately five to eight nanometers) above the HDD's spinning platters. The distance between the read/write head and the platters is referred to as the "flying height." A suspension assembly consists of three main components: a base plate, a load beam and a flexure.



Figure 2.[3]

---

[3] Jianbin Nie, *Control Design and Implementation of Hard Disk Drive Servos*, dissertation, *available at* https://escholarship.org/content/qt9cx397x2/qt9cx397x2.pdf.



Figure 3.[4]

34.    Manufacturers and suppliers of HDD Suspension Assemblies sell them directly to HDD manufacturers, which in turn sell HDDs containing HDD Suppression Assemblies to manufacturers of products that include HDDs, or to consumers.

**B.    Unlawful Price-Fixing Conspiracy and Market Allocation Agreement**

35.    From at least as early as May 2008 and continuing until at least April 2016, Defendants knowingly entered into and engaged in a conspiracy to suppress and eliminate competition by fixing prices for HDD Suspension Assemblies sold in the United States and elsewhere.

36.    To carry out their conspiracy, Defendants engaged in a variety of unlawful activities. At times, Defendants engaged in discussions and attended meetings during which they reached agreements to refrain from competing on

---

[4]    *Hard Drives: How Do They Work?*, *available at* https://blogs.umass.edu/Techbytes/2017/04/04/hard-drives-how-do-they-work/

prices for, fix the prices of, and allocate their respective market shares for, HDD suspension assembles to be sold in the U.S. and globally.

37.     Defendants also exchanged HDD Suspension Assemblies pricing information, including anticipated pricing quotes. Defendants used the exchanged pricing information to inform their negotiations with U.S. and foreign customers that purchased HDD Suspension Assemblies and produced hard disk drives for sale in, or delivery to, the United States and elsewhere.

38.     The conspiracy engaged in by Defendants was a per se unlawful restraint of trade and commerce in violation of various state antitrust laws.

### 1.     DOJ and JFTC Investigations

39.     On July 26, 2016, JFTC raided the offices of TDK Corp. on suspicion that the company was in violation of antitrust laws. That same day, JFTC and DOJ also conducted on-site inspections of NHK Spring and NHK International based on the same suspicions:

> On July 26, 2016, [NHK Spring] and NHK International Corporation, a consolidated subsidiary in the United States, underwent an on-site inspection by the Japan Fair Trade Commission and the United States Department of Justice on suspicion of violating the Antimonopoly Act of Japan and the Antitrust Law of the United States concerning trading of hard disk drive devices.[5]

40.     On February 9, 2018, JFTC issued a cease and desist order and fined NHK Spring and NAT Hong Kong 1.1 billion yen (nearly $10 million) for price-

---

[5] https://www.nhkspg.co.jp/eng/ir/pdf/Annual%20Report%202018.pdf

fixing HDD Suspension Assemblies. TDK Corp. and its subsidiaries avoided any financial penalty by applying for leniency and cooperating with the Japanese regulators. TDK Corp.'s application for leniency, pursuant to the applicable statute, indicates an admission by TDK Corp. that it, in fact, engaged in the conduct it was accused of committing.

41.    On July 29, 2019, DOJ filed a one-count information in this court against NHK Spring Co. Ltd, charging the company with fixing prices on HDD Suspension Assemblies. According to the information, NHK Spring and its co-conspirators did the following for the purpose of forming and carrying out their conspiracy:

(a)    engaging in discussions and attending meetings during which they reached agreements to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for HDD suspension assembles to be sold in the United States and elsewhere;

(b)    exchanging pricing information for HDD suspension assemblies, including anticipated pricing quotes in the United States and elsewhere;

(c)    relying on their agreements not to compete and using the exchanged pricing information to inform their negotiations with U.S. and foreign

customers that purchased HDD suspension assemblies and produced hard disk drives for sale in, or delivery to, the United States and elsewhere;

(d)     selling HDD suspension assemblies in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices; and

(e)     accepting payment for HDD suspension assemblies sold in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices.

42.    NHK Spring has agreed to plead guilty and pay a $28.5 million criminal fine, subject to court approval.

### 2.    Other Governmental Investigations

43.    In January 2018, it was reported that South Korea's antitrust regulator, KFTC, was investigating suspected collusion by manufacturers of HDD suspension assemblies.

44.    In April 2018, Brazil's antitrust regulator, CADE, revealed that it was also investigating Defendants' conspiracy. CADE indicated that anticompetitive practices were conducted by at least 38 individuals and were implemented through meetings and e-mail exchanges.

### C.    The Structure and Characteristics of the HDD Suspension Assemblies Market Render the Conspiracy Plausible

45.    The structure and characteristics of the HDD Suspension Assemblies market in the United States are conducive to a price-fixing agreement. Specifically,

the HDD Suspension Assemblies market: (1) is highly concentrated; (2) has high barriers to entry; and (3) exhibits inelasticity of demand.

### 1. The HDD Suspension Assemblies Market Is Highly Concentrated

46.     The demand for HDD Suspension Assemblies depends on the demand for HDDs, which in turn is driven by demand for storage, primarily generated by increasingly complex software.

47.     Beginning in the 1980s, HDDs were incorporated into computers as well as a large section of consumer electronics appliances, such as digital video recorders, MP3 players, digital cameras, and mobile phones.

48.     In the 1980s, there were more than 20 producers of HDD Suspension Assemblies. But by 2005, there were fewer than five major producers left in the market.

49.     In the mid-1990s, Hutchinson became the main producer of HDD Suspension Assemblies, holding a 70% market share and generating approximately $450 million per year in revenue.

50.     In 2003, Defendants SAE and NHK Spring entered into a joint venture to form NAT Hong Kong. NAT Hong Kong engages in the manufacture of HDD Suspension Assemblies. The joint venture was terminated in April 2015, and SAE's share in NAT Hong Kong was transferred to NHK Spring.

51.    By 2005, three companies—Hutchinson, NHK Spring, and MPT—collectively controlled approximately 94% of the global HDD suspension assembly market. Hutchinson held a 55% market share, NHK Spring held a 22% market share, and MPT held a 20% market share.

52.    In 2007, TDK Corp. announced its acquisition of a majority share of MPT. Following this acquisition, Defendant TDK Corp. began producing HDD Suspension Assemblies.

53.    By 2012, Defendants TDK Corp., NHK Spring, and Hutchinson collectively controlled 96% of the global market.

54.    In November 2015, TDK Corp. announced its acquisition of Hutchinson. The acquisition was completed in October 2016. Following the acquisition, TDK Corp.'s market share grew to 55-60% market share, and TDK Corp. noted that NHK Spring was its only competitor in the global market for HDD Suspension Assemblies.[6]

55.    Throughout the Class Period, Defendants controlled approximately 90-95% of the global market for HDD Suspension Assemblies.

## 2.    The HDD Suspension Assemblies Market Has High Barriers to Entry

56.    A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to

---

[6] https://www.tdk.com/ir/ir_library/annual/pdf/2017_all.pdf

benefit from the supra-competitive pricing. Where, however, there are significant barriers to entry, new entrants are less likely. Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

57.     There are substantial barriers that preclude, reduce, or make more difficult entry into the HDD Suspension Assemblies market. A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long-standing customer relationships.

### 3.     There Is Inelasticity of Demand for HDD Suspension Assemblies

58.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality and so continue to purchase despite a price increase.

59.     For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales, revenues and profits, as customers purchased substitute products or declined to buy altogether. Inelastic demand is a market

characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

60.     Demand for HDD Suspension Assemblies is highly inelastic because there are no close substitutes for these products. In addition, customers must purchase HDD Suspension Assemblies as an essential part of an HDD—or product containing an HDD—even if the prices are kept at a supra-competitive level.

## VI.    TRADE AND INTERSTATE COMMERCE

61.     The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of and substantially affected interstate commerce.

62.     During the Class Period, Defendants and their co-conspirators, manufactured, sold and/or shipped substantial quantities of HDD Suspension Assemblies, in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states in which the Defendants produced HDD Suspension Assemblies.

63.     The conspiracy in which the Defendants and their co-conspirators participated had a direct, substantial, and reasonably foreseeable effect on United States commerce.

## VII.   ANTITRUST INJURY

64.     During the Class Period, Plaintiff and Class Members purchased HDD Suspension Assemblies. As a result of Defendants' anticompetitive conduct, Plaintiff and Class Members paid more for HDD Suspension Assemblies than they would have absent that conduct, and thus suffered substantial damages. This is a cognizable antitrust injury and constitutes harm to competition.

65.     Because Defendants' unlawful conduct has successfully restrained competition in the market for HDD Suspension Assemblies, Plaintiff and Class Members have sustained, and continue to sustain, significant losses in the form of artificial, supra-competitive prices for HDD Suspension Assemblies. The full amount of such damages will be calculated after discovery and upon proof at trial.

66.     No   procompetitive   justification   or   effects   outweigh   the anticompetitive effects of Defendants' conduct.

67.     Plaintiff and Class Members are suitable plaintiffs for pursuing antitrust claims against Defendants, insofar as they purchased HDD Suspension Assemblies during the Class Period, and thus were harmed by Defendants' anticompetitive conduct.

68.     As a intended, foreseeable, and proximate result of Defendants' unlawful conspiracy and acts in furtherance of their conspiracy, Plaintiff and Class Members have been injured in their business and property. The injury to Plaintiff

and Class Members is the type the antitrust laws were designed to prevent and flows from Defendants' unlawful anticompetitive conduct.

## VIII.  PLAINTIFF'S CLAIMS ARE TIMELY

### A.     The Statute of Limitations Did Not Begin to Run Because Plaintiff Did Not and Could Not Discover Its Claims

69.     Plaintiff repeats and re-alleges the allegations set forth above.

70.     Plaintiff and the members of the Class had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims as a U.S. consumer set forth herein, until the public announcement of NHK Spring's agreement to plead guilty to the DOJ on July 29, 2019.

71.     Plaintiff and the members of the Class are purchasers who purchased products containing HDD Suspension Assemblies manufactured and produced by Defendants. They had no direct contact or interaction with any Defendants in this case and had no means from which they could have discovered the combination and conspiracy described in this Complaint before the DOJ's announcement of NHK Spring's agreement to plead guilty on July 29, 2019.

72.     No information in the public domain was available to Plaintiff and members of the Class prior to NHK Spring's agreement to plead guilty to the DOJ on July 29, 2019 that revealed sufficient information to suggest that any one of Defendants was involved in a criminal conspiracy to eliminate competition and fix

prices for HDD Suspension Assemblies in the U.S. market. Plaintiff and the members of the Class had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with their direct purchasers, much less the fact that they had engaged in the combination and conspiracy alleged herein.

73.    For these reasons, the statute of limitations as to Plaintiff's and members of the Class's claims did not begin to run, and has been tolled with respect to the claims that Plaintiff and the members of the Class have alleged in this Complaint.

**B.    Fraudulent Concealment Tolled the Statute of Limitations**

74.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiff and the Class. Plaintiff and the members of the Class did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until the public announcement of NHK Spring's agreement to plead guilty to DOJ on July 29, 2019.

75.    Because Defendants' agreements, understandings and conspiracies were kept secret until July 29, 2019, Plaintiff and members of the Class before that time were unaware of Defendants' unlawful conduct, and they did not know before

then that they were paying supracompetitive prices for HDD suspension assemblies throughout the United States during the Class Period.

76.    The affirmative acts of Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

77.    By its very nature, Defendants' anticompetitive conspiracy was inherently self-concealing. HDD suspension assemblies are not exempt from antitrust regulation, and thus, before July 29, 2019, Plaintiff reasonably considered it to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' HDD suspension assembly prices before July 29, 2019.

78.    Plaintiff and the members of the Class could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

79.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Class had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate

whether a conspiracy existed, until July 29, 2019, when DOJ announced NHK Spring's agreement to plead guilty.

80.    As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiff and members of the Class have alleged in this Complaint.

### C.    Defendants' Actions Are a Continuing Violation

81.    In the alternative, this complaint alleges a continuing course of conduct (including conduct within the limitations periods), and Plaintiff and members of the Class are entitled to recover damages they suffered during the limitations period.

82.    A cause of action accrued for Plaintiff and members of the Class each time Plaintiff or members of the Class purchased an HDD Suspension Assembly sold at a price artificially inflated by Defendants' unlawful agreement.

## IX.    CLASS ACTION ALLEGATIONS

Plaintiff brings this action on behalf of itself and all others similarly situated as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class:

> All persons and entities that indirectly purchased HDD Suspension Assemblies from Defendants in the United States during the Class Period, including the purchase of HDD Suspension Assemblies as a stand-alone replacement product or as a component of new piece of electronic hardware, in the District of Columbia, Puerto

Rico, or any of the following states and commonwealths: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, or Wyoming.

83. The following persons and entities are excluded from the above-described proposed Class:

(a) Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;

(b) All governmental entities;

(c) All persons or entities who purchased HDD Suspension Assemblies for purposes of resale or directly from Defendants or their affiliates;

(d) All Counsel of Record; and

(e) The Court, Court personnel, and any member of their immediate families.

84. Members of the Class are so numerous and geographically dispersed that joinder of all members of the Class is impracticable. Plaintiff believes that there are thousands of members of the Class widely dispersed throughout the

United States. Moreover, given the costs of complex antitrust litigation, it would be uneconomic for many plaintiffs to bring individual claims and join them together.

85.    Plaintiff's claims are typical of the claims of members of the Class. Plaintiff and members of the Class were harmed by the same wrongful conduct by Defendants in that they paid artificially inflated prices for HDD Suspension Assemblies and were deprived of the benefits of competition.

86.    Plaintiff will fairly and adequately protect and represent the interests of members of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of members of the Class.

87.    Plaintiff is represented by counsel with experience in the prosecution of complex class action antitrust litigation.

88.    Questions of law and fact common to members of the Class predominate over questions that may affect only individual members of the Class because Defendants have acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendants' wrongful conduct.

89.    Questions of law and fact common to the Class include:

(a)    Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of HDD Suspension Assemblies sold in the United States;

(b)    The identity of the participants of the alleged conspiracy;

(c)     The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether the alleged conspiracy violated state antitrust and unfair competition law, and/or state consumer protection law;

(e)     Whether Defendants unjustly enriched themselves to the detriment of the Plaintiff and members of the Class, thereby entitling Plaintiff and members of the Class to disgorgement of all benefits derived by Defendants;

(f)     Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and members of the Class;

(g)     The effect of the alleged conspiracy on the prices of HDD Suspension Assemblies sold in the United States during the Class Period;

(h)     Whether Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiff and members of the Class; and

(i)     The appropriate class-wide measure of damages for the Class.

90.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits

of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action.

91.    Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## X.    CLAIMS FOR RELIEF

### COUNT I
### Conspiracy and Combination in Restraint of Trade under State Law

92.    Plaintiff incorporates the preceding paragraphs by reference.

93.    During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of HDD Suspension Assemblies in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

94.    The contract, combination, or conspiracy consisted of an agreement among Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supracompetitive prices for HDD Suspension Assemblies and to allocate customers for HDD Suspension Assemblies in the United States.

95.    Defendants' unlawful agreement harmed Plaintiff and members of the Class as set forth above.

96.     There is no legitimate, non-pretextual, procompetitive business justification for the unlawful agreement.

97.     Defendants' conduct violated the following state antitrust laws:

(a)     Ariz. Rev. Stat. §§ 44-1401, et seq., with respect to purchases in Arizona by members of the Class;

(b)     Cal. Bus. Code §§ 16700, et seq., and Cal. Bus. Code §§ 17200, et seq., with respect to purchases in California by members of the Class;

(c)     Conn. Gen. Stat. § 35-24, et seq., with respect to purchases in Connecticut by members of the Class;

(d)     D.C. Code Ann. §§ 28-4501, et seq., with respect to purchases in the District of Columbia by members of the Class;

(e)     Hawaii Code § 480, et seq., with respect to purchases in Hawaii by members of the Class;

(f)     740 Ill. Comp. Stat. Ann. 10 / 3, *et seq.*, with respect to purchases in Illinois by members of the Class;

(g)     Iowa Code §§ 553 et seq., with respect to purchases in Iowa by members of the Class;

(h)     Kan. Stat. Ann. §§ 50-101, *et seq.*, with respect to purchases in Kansas by members of the Class;

(i)     Md. Code, Com. Law § 11-201, et seq., with respect to purchases in Maryland by members of the Class;

(j)     Me. Rev. Stat. Ann. 10, §§ 1101, et seq., with respect to purchases in Maine by members of the Class;

(k)     Mich. Comp. Laws Ann. §§ 445.772, et seq., with respect to purchases in Michigan by members of the Class;

(l)     Minn. Stat. §§ 325D.49, et seq., with respect to purchases in Minnesota by members of the Class;

(m)     Miss. Code Ann. §§ 75-21-1, *et seq.*, with respect to purchases in Mississippi by members of the Class;

(n)     Neb. Code Ann. §§ 59-801, et seq., with respect to purchases in Nebraska by members of the Class;

(o)     Nev. Rev. Stat. Ann. §§ 598A, et seq., with respect to purchases in Nevada by members of the Class, in that thousands of sales of HDD Suspension Assemblies took place in Nevada;

(p)     N.H. Rev. Stat. Ann. §§ 356:1, et seq., with respect to purchases in New Hampshire by members of the Class;

(q)     N.M. Stat. Ann. §§ 57-1-1, et seq., with respect to purchases in New Mexico by members of the Class;

(r)    N.Y. Gen. Bus. L. §§ 340, et seq., with respect to purchases in New York by members of the Class;

(s)    N.C. Gen. Stat. §§ 75-1, et seq., with respect to purchases in North Carolina by members of the Class;

(t)    N.D. Cent. Code §§ 51-08.1-01, et seq., with respect to purchases in North Dakota by members of the Class;

(u)    Or. Rev. Stat. §§ 6.46.705, et seq., with respect to purchases in Oregon by members of the Class;

(v)    S.D. Codified Laws Ann. §§ 37-1, et seq., with respect to purchases in South Dakota by members of the Class;

(w)    Tenn. Code Ann. §§ 47-25-101, et seq., with respect to purchases in Tennessee by members of the Class, with thousands of purchasers in Tennessee paying substantially higher prices for HDD Suspension Assemblies;

(x)    Utah Code Ann. §§ 76-10-3101, *et seq.*, with respect to purchases in Utah by Members of the Class who are either citizens or residents of Utah;

(y)    Vt. Stat. Ann. 9, §§ 2453, et seq., with respect to purchases in Vermont by members of the Class;

(z)    W.Va. Code §§ 47-18-3, et seq., with respect to purchases in West Virginia by members of the Class; and

(aa)   Wis. Stat. §§ 133.03, et seq., with respect to purchases in Wisconsin by members of the Class, in that the actions alleged herein substantially affected the people of Wisconsin, with thousands of purchasers in Wisconsin paying substantially higher prices for HDD Suspension Assemblies.

98.   Plaintiff and members of the Class seek damages and multiple damages as permitted by law for the injuries they suffered as a result of Defendants' anticompetitive conduct.

99.   Defendants are jointly and severally liable for all damages suffered by Plaintiff and members of the Class.

## COUNT II

### State Consumer Protection Violations

100.   Plaintiff incorporates the preceding paragraphs by reference.

101.   Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection statutes listed below. As a direct and proximate result of Defendants' anticompetitive, deceptive, unfair, unconscionable, and fraudulent conduct, Plaintiff and members of the Class were forced to pay higher prices for HDD Suspension Assemblies..

102.   There is gross disparity between the price that Plaintiff and members of the Class paid for HDD Suspension Assemblies compared to what they should have paid but for Defendants' unlawful conduct.

103.   By engaging in the foregoing conduct, Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of the following state unfair and deceptive trade practices and consumer protection statutes:

**Florida Deceptive & Unfair Trade Practices Act ("FDUTPA")**

**Florida Stat. §§ 501.201, et seq.**

104.   The primary policy of the FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Florida Stat. §§ 501.202(2).

105.   A claim for damages under the FDUTPA has three elements: (1) a prohibited practice; (2) causation; and (3) actual damages.

106.   Under Florida law, indirect purchasers have standing to maintain an action under the FDUTPA.

107.   Defendants' conduct constitutes an unfair method of competition because Defendants' agreements restrained trade in the market for HDD Suspension Assemblies by (1) suppressing and eliminating price competition for

HDD Suspension Assemblies; and (2) raising and maintaining the prices that Plaintiff and members of the Class paid for HDD Suspension Assemblies to supra-competitive levels.

108.    Defendants caused purchasers of HDD Suspension Assemblies in Florida to pay supracompetitive prices. Further, Defendants' conduct had a direct and substantial impact on trade and commerce in Florida.

109.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, et seq., and, accordingly, Plaintiff and members of the Class seek all relief available under that statute.

**Massachusetts Consumer Protection Act ("MCPA")**

**Mass. Gen. L. Ch. 93A, et seq.**

110.    The MCPA regulates trade and commerce "directly or indirectly affecting the people of this commonwealth." Mass. Gen. L. Ch. 93A § 9(1).

111.    Under the MCPA, "[a]ny person, who has been injured by another person's use or employment of any method, act or practice" that constitutes "[u]unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. Ch. 93A §§ 2, 9(1). MCPA § 2(b) provides that these terms are interpreted consistent with Section 5 of the FTC Act (15 U.S.C. § 45(a)), which also prohibits "[u]nfair methods of competition in

or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." Mass. Gen. L. Ch. 93A § 2(b); 15 U.S. § 45(a)(1).

112.    Under Massachusetts law, indirect purchasers have standing to maintain an action under the MCPA.

113.    Defendants' conduct constitutes an unfair method of competition because Defendants' agreements restrained trade in the market for HDD Suspension Assemblies by (1) suppressing and eliminating price competition for HDD Suspension Assemblies; and (2) raising and maintaining the prices that Plaintiff and members of the Class paid for HDD Suspension Assemblies to supra-competitive levels.

114.    Defendants caused purchasers of HDD Suspension Assemblies in Massachusetts to pay supracompetitive prices. Further, Defendants' conduct had a direct and substantial impact on trade and commerce in Massachusetts.

115.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ch. 93A § 2., and, accordingly, Plaintiff and members of the Class seek all relief available under that statute.

**Missouri Merchandising Practices Act ("MMPA")**

**Mo. Rev. Stat. 407.020**

116.    Under Section 407.020, the MMPA prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise,

misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. 407.020.

117. The Missouri Attorney General has defined an "unfair practice" as:

> any practice which . . . [o]ffends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or . . . [i]s unethical, oppressive, or unscrupulous; and . . . [p]resents a risk of, or causes, substantial injury to consumers.

Mo. Att'y Gen. Reg., 15 CSR 60-8.02.

118. Under Missouri law, indirect purchasers have standing to maintain an action under the MMPA.

119. Defendants' conduct constitutes an unfair method of competition because Defendants' agreements restrained trade in the market for HDD Suspension Assemblies by (1) suppressing and eliminating price competition for HDD Suspension Assemblies; and (2) raising and maintaining the prices that Plaintiff and members of the Class paid for HDD Suspension Assemblies to supra-competitive levels.

120. Defendants caused purchasers of HDD Suspension Assemblies in Missouri to pay supracompetitive prices. Further, Defendants' conduct had a direct and substantial impact on trade and commerce in Missouri. Upon information and

belief, Defendants also directed advertising and marketing efforts for HDD Suspension Assemblies in Missouri.

121.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of the MMPA, and, accordingly, Plaintiff and members of the Class seek all relief available under that statute.

## COUNT II
### Unjust Enrichment

122.   Plaintiff incorporates by reference the preceding allegations.

123.   To the extent required, this claim is pled in the alternative to the other claims in this Complaint.

124.   This claim is pled by Plaintiff and members of the Class against all Defendants.

125.   Defendants have financially benefited from overcharges on sales of HDD Suspension Assemblies, which resulted from the unlawful and inequitable acts alleged in this Complaint. These overcharges were borne by Plaintiff and members of the Class who purchased HDD Suspension Assemblies. The benefits conferred upon Defendants are substantial and measurable, in that the revenues Defendants have earned due to unlawful overcharges are ascertainable by review of both sales records and the unlawful agreement itself.

126.   There is gross disparity between the price that Plaintiff and members of the Class paid for HDD Suspension Assemblies compared to what they would have paid but for Defendants' unlawful and inequitable conduct.

127.   Defendants repeatedly and continuously received financial benefits at the expense of Plaintiff and members of the Class through each sale of HDD Suspension Assemblies at an inflated price.

128.   It would be futile for Plaintiff and members of the Class to seek a remedy from any party with whom they had or have privity of contract. Defendants have paid no consideration to any other person for any of the benefits they received indirectly from Plaintiff and members of the Class.

129.   It would be futile for Plaintiff and members of the Class to seek to exhaust any remedy against the immediate intermediary in the chain of distribution from which they indirectly purchased HDD Suspension Assemblies, as those intermediaries cannot reasonably be expected to compensate Plaintiff and members of the Class for Defendants' unlawful conduct.

130.   The financial benefits that Defendants derived rightfully belong to Plaintiff and members of the Class, which paid anticompetitive prices that inured to Defendants' benefit.

131.   It would be inequitable under the unjust enrichment principles of the states listed below for Defendants to retain any of the overcharges that Plaintiff and

members of the Class paid for HDD Suspension Assemblies, which were derived from Defendants' anticompetitive, unfair, and unconscionable methods, acts, and trade practices.

132. Defendants should be compelled to disgorge all unlawful or inequitable proceeds received by them into a common fund for the benefit of Plaintiff and members of the Class.

133. A constructive trust should be imposed upon all unlawful or inequitable sums Defendants received, which arise from overpayments for HDD Suspension Assemblies by Plaintiff and members of the Class.

134. Plaintiff and members of the Class have no adequate remedy at law.

135. By engaging in the foregoing unlawful or inequitable conduct, Defendants have been unjustly enriched in violation of the common law of various states and commonwealths, as outlined below:

**Alabama**

136. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Alabama at prices that were more than they would have been but for Defendants' actions. Defendants received money from the Class as a direct result of the unlawful overcharges and have retained this money. Defendants have benefitted at the expense of the Class from revenue resulting from unlawful overcharges for HDD Suspension Assemblies. It is

inequitable for Defendants to accept and retain the benefits received without compensating the Class.

## Alaska

137.   Defendants unlawfully overcharged Members of the Class, who purchased HDD Suspension Assemblies in Alaska at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefits bestowed upon them by the Class. Defendants accepted and retained the benefits bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Arizona

138.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Arizona at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for HDD Suspension Assemblies. The Class has been impoverished by the overcharges for HDD Suspension Assemblies resulting from Defendants' unlawful conduct. Defendants' enrichment

and the Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment and the Class's impoverishment, because the Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. The Class has no remedy at law.

### Arkansas

139.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Arkansas at prices that were more than they would have been but for Defendants' actions. Defendants received money from the Class as a direct result of the unlawful overcharges and have retained this money. Defendants have paid no consideration to any other person in exchange for this money. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

### California

140.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in California at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Class as a direct result of the unlawful overcharges. Defendants retained the benefits bestowed upon them under inequitable and unjust circumstances at the expense of the Class.

**Colorado**

141.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Colorado at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants have benefitted at the expense of the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

**Connecticut**

142.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Connecticut at prices that were more than they would have been but for Defendants' actions. Defendants were benefitted in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants have paid no consideration to any other person in exchange for this benefit. Defendants retained the benefits bestowed upon them under inequitable and unjust circumstances at the expense of the Class.

**Delaware**

143.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Delaware at prices that were more than

they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for HDD Suspension Assemblies. The Class has been impoverished by the overcharges for HDD Suspension Assemblies resulting from Defendants' unlawful conduct. Defendants' enrichment and the Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment, because the Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. The Class has no remedy at law.

## District of Columbia

144.  Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in the District of Columbia at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants retained the benefit bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to the Class. Under the circumstances, it would be inequitable and unjust for Defendants to retain such benefits.

## Florida

145.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Florida at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefits bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Georgia

146.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Georgia at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Hawaii

147.    Defendants unlawfully overcharged Members of the Class, who purchased HDD Suspension Assemblies in Hawaii at prices that were more than

they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Idaho

148. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Idaho at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefit conferred upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Illinois

149. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Illinois at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants retained

the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to the Class. It is against equity, justice, and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

## Iowa

150.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Iowa at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for HDD Suspension Assemblies, which revenue resulted from anticompetitive prices paid by the Class, which inured to Defendants' benefit. Defendants' enrichment has occurred at the expense of the Class. Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating the Class.

## Kansas

151.    Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Kansas at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful

overcharges to the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Kentucky

152. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Kentucky at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefit conferred upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Louisiana

153. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Louisiana at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for HDD Suspension Assemblies. The Class has been impoverished by the overcharges for HDD Suspension Assemblies resulting from Defendants' unlawful conduct. Defendants' enrichment and the Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment, because the Class

paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. The Class has no other remedy at law.

## Maine

154. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Maine at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of or appreciated the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Maryland

155. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Maryland at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of or appreciated the benefit bestowed upon them by the Class. Under the

circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Massachusetts

156. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Massachusetts at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of or appreciated the benefit conferred upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Michigan

157. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Michigan at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to the Class. Under the

circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Minnesota

158. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Minnesota at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated and knowingly accepted the benefits bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Mississippi

159. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Mississippi at prices that were more than they would have been but for Defendants' actions. Defendants received money from the Class as a direct result of the unlawful overcharges. Defendants retain the benefit of overcharges received on the sales of HDD Suspension Assemblies, which in equity and good conscience belong to the Class on account of Defendants' anticompetitive conduct. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Missouri

160. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Missouri at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefit bestowed upon them by the Class. Defendants accepted and retained the benefit bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to the Class.

## Montana

161. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Montana at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Nebraska

162. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Nebraska at prices that were more than

they would have been but for Defendants' actions. Defendants received money from the Class as a direct result of the unlawful overcharges and have retained this money. Defendants have paid no consideration to any other person in exchange for this money. In justice and fairness, Defendants should disgorge such money and remit the overcharged payments back to the Class.

## Nevada

163.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Nevada at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges for HDD Suspension Assemblies. Defendants appreciated the benefits bestowed upon them by the Class, for which they have paid no consideration to any other person. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## New Hampshire

164.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in New Hampshire at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that

inured to the benefit of Defendants. Under the circumstances, it would be unconscionable for Defendants to retain such benefits.

## New Jersey

165. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in New Jersey at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. The benefits conferred upon Defendants were not gratuitous, in that they comprised revenue created by unlawful overcharges arising from unlawful overcharges to the Class. Defendants have paid no consideration to any other person for any of the unlawful benefits they received from the Class with respect to Defendants' sales of HDD Suspension Assemblies. Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating the Class.

## New Mexico

166. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in New Mexico at prices that were more than they would have been but for Defendants' actions. Defendants have knowingly benefitted at the expense of the Class from revenue resulting from

unlawful overcharges for HDD Suspension Assemblies. To allow Defendants to retain the benefits would be unjust because the benefits resulted from anticompetitive pricing that inured to Defendants' benefit and because Defendants have paid no consideration to any other person for any of the benefits they received.

## New York

167.   Defendants unlawfully overcharged Members of the Class, who purchased HDD Suspension Assemblies in New York at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for HDD Suspension Assemblies, which revenue resulted from anticompetitive prices paid by the Class, which inured to Defendants' benefit. Defendants' enrichment has occurred at the expense of the Class. It is against equity and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

## North Carolina

168.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in North Carolina at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. The Class did not

interfere with Defendants' affairs in any manner that conferred these benefits upon Defendants. The benefits conferred upon Defendants were not gratuitous, in that they comprised revenue created by unlawful overcharges arising from unlawful overcharges to the Class. The benefits conferred upon Defendants are measurable, in that the revenue Defendants have earned due to unlawful overcharges are ascertainable by review of sales records. Defendants consciously accepted the benefits conferred upon them.

### North Dakota

169. Defendants unlawfully overcharged Members of the Class, who purchased HDD Suspension Assemblies in North Dakota at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for HDD Suspension Assemblies. The Class has been impoverished by the overcharges for HDD Suspension Assemblies resulting from Defendants' unlawful conduct. Defendants' enrichment and the Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment, because the Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. The Class has no remedy at law. Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating the Class.

## Oklahoma

170.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Oklahoma at prices that were more than they would have been but for Defendants' actions. Defendants received money from the Class as a direct result of the unlawful overcharges and have retained this money. Defendants have paid no consideration to any other person in exchange for this money. The Class has no remedy at law. It is against equity and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

## Oregon

171.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Oregon at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of the benefit bestowed upon them by the Class. Under the circumstances, it would be unjust for Defendants to retain such benefits without compensating the Class.

## Pennsylvania

172. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Pennsylvania at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Puerto Rico

173. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Puerto Rico at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for HDD Suspension Assemblies. The Class has been impoverished by the overcharges for HDD Suspension Assemblies resulting from Defendants' unlawful conduct. Defendants' enrichment and the Class's impoverishment are connected. There is no justification for Defendants' receipt of the benefits causing their enrichment and the Class's impoverishment, because the Class paid supracompetitive prices that inured to

Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. The Class has no remedy at law.

## Rhode Island

174. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Rhode Island at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## South Carolina

175. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in South Carolina at prices that were more than they would have been but for Defendants' actions. The benefits conferred upon Defendants were not gratuitous, in that they comprised revenue created by unlawful overcharges arising from unlawful overcharges to the Class. Defendants realized value from the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

**South Dakota**

176.  Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in South Dakota at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants were aware of the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable and unjust for Defendants to retain such benefits without reimbursing the Class.

**Tennessee**

177.  Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Tennessee at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class. It would be futile for the Class to seek a remedy from any party with whom they have privity of contract. Defendants have paid no consideration to any other person for any of the unlawful benefits they received

indirectly from the Class with respect to Defendants' sales of HDD Suspension Assemblies. It would be futile for the Class to exhaust all remedies against the entities with which the Class has privity of contract because the Class did not purchase HDD Suspension Assemblies directly from any Defendant.

## Texas

178.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Texas at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from the Class in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Defendants were aware of or appreciated the benefit bestowed upon them by the Class. The circumstances under which Defendants have retained the benefits bestowed upon them by the Class are inequitable in that they result from Defendants' unlawful overcharges for HDD Suspension Assemblies. The Class has no remedy at law.

## Utah

179.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Utah at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful

overcharges to the economic detriment of the Class. Defendants were aware of or appreciated the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Vermont

180.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Vermont at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants accepted the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Virginia

181.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Virginia at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of the benefit bestowed upon them. Defendants should reasonably have expected to repay the Class. The benefits conferred upon Defendants were not

gratuitous, in that they constituted revenue created by unlawful overcharges arising from Defendants' illegal and unfair actions to inflate the prices of HDD Suspension Assemblies. Defendants have paid no consideration to any other person for any of the benefits they have received from the Class.

## Washington

182.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Washington at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of or appreciated the benefit conferred upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## West Virginia

183.   Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in West Virginia at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants were aware of or appreciated the benefit bestowed upon them by the Class. Under the

circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Wisconsin

184. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Wisconsin at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants appreciated the benefit bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## Wyoming

185. Defendants unlawfully overcharged members of the Class, who purchased HDD Suspension Assemblies in Wyoming at prices that were more than they would have been but for Defendants' actions. The Class has conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of the Class. Defendants accepted, used and enjoyed the benefits bestowed upon them by the Class. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating the Class.

## XI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and the other members of the Class, prays for judgment as follows:

(a)     Determine that this action may be maintained as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice

of this action, as provided by Rule 23(c)(2), be given to the Class, and declare Plaintiff as the representative of the Class;

(b)      Enter joint and several judgments against Defendants and in favor of Plaintiff and the Class;

(c)     Award the Class damages, and, where applicable, treble, multiple, punitive, and other damages, in an amount to be determined at trial;

(d)     Award Plaintiff and the Class their costs of suit, including reasonable attorneys' fees as provided by law; and

(e)     Award such further and additional relief as the case may require and the Court may deem just and proper under the circumstances.

## XII.  JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all issues so triable.


DATED: August 7, 2019

<div style="margin-left:40%">

By: */s/ David H. Fink*
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
**FINK BRESSACK**
38500 Woodward Avenue, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkbressack.com
dbressack@finkbressack.com
nfink@finkbressack.com

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th
Floor
New York, NY 10036-8718
Telephone: (917) 438-9189
lnussbaum@nussbaumpc.com

Michael E. Criden
Kevin B. Love
**CRIDEN & LOVE, P.A.**
7301 SW 57th Court, Ste. 515
South Miami, FL 33143
Telephone: (305) 357-9000
mcriden@cridenlove.com
klove@cridenlove.com

*Counsel for Plaintiff and the
Proposed Class*

</div>